UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXODUS TRANSPORT LTD, a Cayman Islands company,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NBC UNIVERSAL MEDIA, LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | Civil Action No.<br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Exodus Transport, Ltd. ("Exodus" or "Plaintiff"), by and through its counsel, Nagel Rice, LLP, by way of complaint against defendant, NBC Universal Media, LLC ("Defendant" or "NBC"), allege as follows:

## THE PARTIES

1.　Exodus is a Cayman Islands company with a principal place of business at Floor 4, Willow House Cricket Square, Grand Cayman KY1-9010, Cayman Islands. Exodus' member is Navigation Marine Assets LLC, a limited liability company and existing under the laws of the State of Delaware. ("Navigation"). The sole member of Navigation is Keith Frankel. ("Frankel"). Frankel, an individual, is domiciled in the state of New Jersey and is a citizen of that state for diversity purposes. Exodus is the owner of the 55.9 meter sailing vessel known as "Zenji" (the "Vessel").

2.　NBC is a limited liability company and existing under the laws of the State of Delaware, with its principal place of business at 30 Rockefeller Plaza, New York, NY 10112. ("NBC"). NBC owns property and transacts substantial business in New York. Its sole member is

1

Comcast Corporation. ("Comcast").  Comcast is a corporation incorporated in the state of Pennsylvania, with its principal place of business in the state of Pennsylvania.

3. NBC is involved in the media and entertainment industry and, among other things, produces and distributes entertainment and programming.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendant does business in and is subject to personal jurisdiction in this District. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## ALLEGATIONS OF FACTS

6. Plaintiff Exodus is the owner of the Vessel.  The Vessel is a 56m/183'9" sail yacht by the Italian shipyard Perini Navi and offers flexible accommodation for up to 12 guests in 6 cabins and features interior styling by Italian designer Perini Navi.  The Vessel offers a combination of luxury and adventure.  Built in 2004, the Vessel offers guest accommodation for up to 12 guests with a layout comprising a master suite, two double cabins and three twin cabins. There are 9 beds in total, including 1 king, 2 queen, 6 singles and 2 pullmans. The Vessel is also capable of carrying up to 10 crew onboard.   The Vessel also has a deck jacuzzi, Wi-Fi connectivity, and air conditioning. The Vessel has two Cayago F5 SEABOBs, two kayaks, two tenders, including a 6.25m/20'6" Castoldi Jet Tender.

7. The Vessel is built with an aluminum hull and aluminum superstructure. Powered by twin Deutz engines, the Vessel comfortably cruises at 13 knots, reaches a maximum speed of 16 knots with a range of up to 4,000 nautical miles from her 59,200 litre fuel tanks at cruising speed.

8. Frankel has used the Vessel on numerous occasions with family and friends and for business. Frankel is extremely proud of the Vessel and decided that he would offer the Vessel for charter and to allow others to experience the luxury of the yacht.

9. By agreement dated November 4, 2024, and later amended, Exodus entered into a contract with Mountain View Production, LLC ("MVP") to charter the Vessel. ("Charter Agreement"). The charter fee was $1.5 million to be paid as follows: First Installment of $100,000 due upon signing and no later than November 21, 2024; the Second Installment of $700,000 due upon signing and no later than December 16, 2024; the Third Installment of $800,000 (consisting of the balance of the charter fee of $700,000 and S/D of $100,000) due no later than February 17, 2025.

10. NBC was fully aware of the terms and conditions of the Charter Agreement before it was signed. MVP entered into the Charter Agreement at the direction of NBC.

11. The Charter Agreement was signed by Frankel on behalf of Exodus.

12. The Vessel was being let to MVP for the purpose of filming a television program for the Below Deck Sailing series ("Below Deck Series") on the Vessel. Exodus and MVP entered into a filming agreement which Exodus signed on or about November 18, 2024 and MVP signed on or about November 12, 2024. ("Filming Agreement").

13. NBC was fully aware of the terms and conditions of the Filming Agreement. MVP entered into the Filming Agreement at the direction of NBC.

14. MVP was the production company for the filming of the Below Deck Series on the Vessel. The Below Deck Series is a property right of Defendant NBC. MVP entered into the Charter

Agreement and the Filming Agreement to film and produce the episode(s) for the Below Deck Series for NBC. NBC was fully aware of the Charter Agreement and the Filming Agreement. NBC was fully aware that the parties entered into the Charter Agreement and Filming Agreement for the purpose of filming the episode(s) for the Below Deck Series on the Vessel.

15. Plaintiff and MVP had extensive negotiations and discussions regarding the Charter Agreement, Filming Agreement and use of the Vessel for the filming of the episode(s) for the Below Deck Series for NBC. The initial inquiry for the charter of the Vessel was received on or around early July, 2024 and thereafter Plaintiff made significant efforts to accommodate the requests and requirements of MVP, on behalf of NBC, in order to make the charter of the Vessel possible for MVP and NBC. These efforts were often undertaken at significant cost and inconvenience to Plaintiff involving the alteration of plans for the Vessel, changing of maintenance dates, refusal of other charter opportunities and even the alteration of the location for the maintenance of the Vessel from Europe to the United States (at additional cost to Plaintiff) to accommodate MVP and NBC. A significant amount of effort was spent by Plaintiff's wider team in relation to the use of the Vessel for filming the episode(s) for the Below Deck Series. Plaintiff's team involved the Vessel's Designated Person Ashore ("DPA") who spent considerable time and effort to obtain dispensation from the Cayman Registry, production team visits to the Vessel were arranged and conducted, the Vessel's insurers were consulted and filming rights agreements were negotiated. This all took place with MVP, on behalf of NBC (a) repeatedly changing the proposed location for the charter to take place – initially the charter was to take place in the Caribbean, this subsequently changed to Costa Rica (involving Plaintiff being required to conduct a transit through the Panama Canal), then MVP asked to change the location to Olbia in Italy and then to Antigua; and (b) repeatedly changing the proposed charter dates - initially the charter was to take place in January – March, 2025 then it was

4

changed to March to May, 2025. Plaintiff went above and beyond to accommodate the ever-changing requirements of MVP, on behalf of NBC, at considerable cost and inconvenience and with a significant investment of time and energy.

16. These negotiations and discussions were all done on behalf of NBC and with NBC's knowledge and at NBC's direction.

17. Prior to the parties entering into the Charter Agreement and the Filming Agreement, NBC knew that it was highly likely that the Below Deck Series would be cancelled or in fact that the Below Deck Series would be cancelled. Prior to the parties entering into the Charter Agreement and the Filming Agreement, NBC purposefully and intentionally led Plaintiff to believe that the Below Deck Series would continue despite knowing that it was already cancelled or highly likely that it would be cancelled. Prior to the parties entering into the Charter Agreement and the Filming Agreement, NBC purposefully and intentionally did not inform Plaintiff that it was highly likely that the Below Deck Series would be cancelled or in fact that the Below Deck Series would be cancelled.

18. NBC put a hold on and/or cancelled the Below Deck Series.

19. Subsequent to the parties entering into the Charter Agreement and the Filming Agreement, and despite being fully aware of the terms and requirements of the Charter Agreement and the Filming Agreement, NBC wrongfully and intentionally directed MVP to cancel the Charter Agreement and the Filming Agreement. Plaintiff was informed that NBC unilaterally, wrongfully and intentionally directed MVP to cancel the Charter Agreement and Filming Agreement.

20. NBC was fully aware that the Charter Agreement stated that Exodus agreed to "let the Vessel to the CHARTERER [MVP] and not to enter into any other Agreement for the Charter of the vessel for the same period." As such, NBC knew that upon entering into the Charter Agreement, Plaintiff

could not let the Vessel to anyone else and that Plaintiff would lose opportunities to let the Vessel to others.

21. NBC was fully aware that Clause 11 of the Charter Agreement, entitled "CANCELLATION BY CHARTERER & CONSEQUENCES OF NON-PAYMENT, DEFAULT OR PAYMENT OR FAILURE TO PAY", states:

- a. i. Should the Charterer give notice of cancellation of this Agreement on or at any time before the commencement of the Charter Period, some or all of the Charter Fee may be retained by the OWNER determined as follows:

    After this Agreement is signed but before the final instalment/deposit is due to be paid, the OWNER shall be entitled to retain the first instalment/deposit.

    After any subsequent instalments/deposits are due to be paid, the OWNER shall be entitled to retain the first instalment/deposit and any subsequent instalments/deposits due.

  If any of the instalment/deposits are due to be paid but have not been paid at the time of notice of cancellation then the OWNER shall have a claim against the CHARTERER for the amount so due.

- ii. Should the CHARTERER fail to pay, after having been given written notice by the OWNER, any amount due under this Agreement, the OWNER reserves the right to treat this Agreement as having bee repudiated by the CHARTERER and to retain the full amount of all payments and to recover all sums unpaid and due up to the date of the repudiation.

22. NBC was fully aware of the significant resources and efforts expended by Plaintiff in reaching the Charter Agreement and the Filming Agreement.

23. NBC knew that when it unilaterally, wrongfully and intentionally directed MVP to cancel the Charter Agreement and the Filming Agreement, Exodus would suffer serious financial loss and damages.

24. NBC cancelled the Below Deck Series. Thereafter, NBC directed MVP to cancel the Charter Agreement and Filming Agreement. MVP, at the direction of NBC, informed Plaintiff

6

that NBC was pulling the funding for and cancelling the Below Deck Series and that it was pulling out of the Charter Agreement and Filming Agreement. As a result of NBC's wrongful and intentional actions Plaintiff was informed that it would not be paid the monies owes pursuant to the Charter Agreement and in fact Plaintiff has not been paid the monies owed pursuant to the Charter Agreement.

25. As a result of NBC's actions and omissions as set forth herein, NBC has intentionally interfered with the contractual relationship between Plaintiff and MVP and Plaintiff's prospective economic gain. This intentional interference is without justification or excuse.

26. As a direct result of NBC's tortious interference, Plaintiff has suffered significant monetary damages and will continue to suffer significant monetary damages in the future.

**FIRST COUNT**

**(TORTIOUS INTERFERENCE WITH CONTRACT)**

27. Plaintiff repeats and realleges each and every allegation set forth above as if fully stated herein.

28. NBC is not a party to the contractual relationship between Plaintiff and MVP including the Charter Agreement and the Filming Agreement. NBC had knowledge of the Charter Agreement and the Filming Agreement.

29. As addressed more fully above, NBC has intentionally and unreasonably interfered, without justification or excuse, and actually interfered with the contractual relationship between Plaintiff and MVP.

30. As addressed more fully above, NBC intentionally induced MVP to breach or otherwise rendered performance impossible.

7

31. As a direct result of NBC's tortious interference with the contractual relationship between Plaintiff and MVP, Plaintiff has suffered damages.

## SECOND COUNT

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

32. Plaintiff repeats and realleges each and every allegation set forth above as if fully stated herein.

33. NBC is not a party to the valid contractual relationship between Plaintiff and MVP including the Charter Agreement and the Filming Agreement.

34. As addressed more fully above, NBC has intentionally and unreasonably interfered, without justification or excuse, and actually interfered with Plaintiff's pursuit of a prospective economic or contractual business relationship with MVP. In doing so, NBC has deprived Plaintiff of its reasonable expectation of economic advantage. NBC's tortious conduct has caused and will continue to cause the loss of prospective gain to Plaintiff.

35. As set forth herein, Plaintiff had a business relationship with MVP. NBC knew of that relationship and intentionally interfered with it. NBC acted solely out of malice, or used dishonest, unfair, or improper means. NBC's interference caused injury to the relationship between Plaintiff and MVP.

36. As a direct result of NBC's tortious interference with Plaintiff's prospective economic advantage, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands judgment against NBC for:

(a) Compensatory damages;

(b) Punitive damages;

(c) Interest;

(d) Cost of suit;

(e) Attorney's fees; and

(f) Such other relief as the Court deems equitable and just.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues in the above matter.

DATED: April 2, 2025                NAGEL RICE, LLP
                                    Attorneys for Plaintiff Exodus Transport, Ltd.

                                    By: /s/*Greg M. Kohn*_____
                                        Greg M. Kohn
                                        Bruce H. Nagel (pro hac vice to be filed)
                                        103 Eisenhower Parkway
                                        Roseland, New Jersey 07068
                                        973-618-0400
                                        gkohn@nagelrice.com
                                        bnagel@nagelrice.com