UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EXODUS TRANSPORT LTD,
               Plaintiff,

    -v-

NBC UNIVERSAL MEDIA, LLC,
               Defendant.

25-CV-2751 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

In November 2024, Plaintiff Exodus Transport LTD ("Exodus") entered into two agreements with Mountain View Production, LLC ("MVP") to charter a luxury sailing yacht for the purposes of filming the series "Below Deck." (ECF No. 14 ("Am. Compl.") ¶¶ 9, 12.) Shortly thereafter, Defendant NBC Universal Media, LLC ("NBC") put the series on hold and allegedly directed MVP to cancel both agreements. (*Id.* ¶ 19.) Exodus brought suit, alleging tortious interference with contract and tortious interference with prospective economic advantage. (ECF No. 1.)

Now before the Court is NBC's motion to dismiss Exodus's First Amended Complaint (the "Amended Complaint"). (ECF No. 22.) For the reasons that follow, the Court grants the motion in part and stays adjudication of the remaining claim pending arbitration.

## I.    Background

The following facts are taken from Exodus's Amended Complaint, as well as documents cited or relied upon for the facts pleaded therein,[1] and are presumed true for the purposes of this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

---

[1] NBC attached a copy of the key contract at issue, the Charter Agreement, to its motion to dismiss. (*See* ECF No. 22-2.) Exodus then attached a copy of the second contract, the Filming Agreement, to its opposition. (*See* ECF No. 26-1.) Although Exodus did not include either

Exodus is the owner of a vessel known as "Zenji," a luxury sailing yacht.  (Am. Compl. ¶¶ 1, 6.)  On November 4, 2024, Exodus entered into an agreement (the "Charter Agreement") with MVP to charter Zenji for the purpose of filming the TV series "Below Deck."  (*Id.* ¶¶ 9, 12.)  Pursuant to the Charter Agreement, a first installment of $100,000 was due upon signing and to be paid no later than November 21, 2024; a second installment of $700,000 was due upon signing and to be paid no later than December 16, 2024; and a third installment of $800,000 was due no later than February 17, 2025.  (*Id.*; ECF No. 22-2 at 2.)  The Charter Agreement was partially amended later that month.  (ECF No. 22-2 at 10, 15.)  Clause 11 of the operative Charter Agreement, titled "Cancellation by Charterer & Consequences of Non-Payment, Default of Payment or Failure to Pay," states:

> Should the CHARTERER give notice of cancellation of this Agreement on or at any time before the commencement of the Charter Period, some or all of the Charter Fee may be retained by the OWNER determined as follows:  After this agreement is signed but before the final instalment/deposit is due to be paid, the OWNER shall be entitled to retain the first instalment/deposit.  After any subsequent instalments/deposits are due to be paid, the OWNER shall be entitled to retain the first instalment/deposit and any subsequent instalments/deposits due.

(*Id.* at 6.)  Clause 11 also clarifies that failure to pay these sums shall be treated as a breach of the Agreement.  (*Id.* at 6, 11.)  In addition to the Charter Agreement, MVP and Exodus entered into a separate filming agreement (the "Filming Agreement") that was executed in mid-November 2024.  (Am. Compl. ¶ 12.)  NBC was aware of the terms and conditions of both agreements and directed MVP to sign them.  (*Id.* ¶¶ 10, 13.)

---

agreement in its pleadings, a court may consider statements and documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).  Because Exodus references and relies on both agreements in its Amended Complaint (*see generally* Am. Compl.), the Court considers the Charter and Filming Agreements to be incorporated by reference and considers them in evaluating NBC's motion to dismiss.

Soon after the agreements were executed, NBC put a hold on or cancelled the Below Deck series.  (*Id.* ¶¶ 19, 25.)  NBC then directed MVP to cancel the Charter and Filming Agreements.  (*Id.* ¶ 29.)  According to Exodus, "NBC knew that it was highly likely that the Below Deck Series would be cancelled or in fact that the Below Deck Series would be cancelled" before the parties entered into either agreement, but withheld this information from Exodus because Exodus otherwise "would not enter into the Charter Agreement or would have required protective language in the Charter Agreement."  (*Id.* ¶¶ 17-18.)  To date, NBC has not paid the $800,000 that Exodus claims it is owed under the Charter Agreement.  (*Id.* ¶¶ 28-29.)

## II.    Procedural History

Exodus filed suit against NBC on April 2, 2025, alleging tortious interference with contract and tortious interference with prospective economic advantage.  (ECF No. 1.)  NBC moved to dismiss Exodus's original complaint on June 2, 2025.  (ECF No. 10.)  In response, Exodus filed an amended complaint on July 9, 2025 (Am. Compl.), which NBC moved to dismiss on August 15, 2025 (ECF No. 22).  Exodus filed its response to NBC's motion to dismiss on October 17, 2025 (ECF No. 26 ("Opp.")), and NBC filed its reply on November 7, 2025 (ECF No. 27 ("Reply")).

NBC and Exodus are currently engaged in arbitration in London to determine whether MVP breached the Charter Agreement and how much Exodus is owed as a result of MVP's cancellation of the contracts.  (ECF No. 23 ("Mem.") at 10; Opp. at 12.)

## III.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation marks omitted). A court is "not, however, bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quotation marks omitted).

**IV.     Discussion**

**A.     Tortious Interference with Prospective Economic Advantage**[2]

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp*, 449 F.3d 388, 400 (2d Cir. 2006) (quotation marks omitted). "[A]s a general rule, a defendant's conduct must amount to a crime or an independent tort in order to amount to tortious interference with a prospective economic advantage." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (summary order) (quotation marks omitted). "A defendant who has not

---

[2] Exodus urges the Court to stay this matter pending resolution of the parties' arbitration in London. (Opp. at 12-13.) NBC seeks adjudication of the merits of its motion and requests a stay only in the alternative. (Mem. at 23; Reply at 13.) Because the Court concludes that Exodus has failed to state a claim for tortious interference with prospective economic advantage regardless of whether MVP breached the Charter Agreement, it declines to exercise its discretion to stay the case as to that claim and instead reaches the merits.

committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which includes "fraud or misrepresentation." *Id.* (quotation marks omitted). "In addition to the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Rule 9(b) by stating the circumstances constituting fraud 'with particularity.'" *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 491 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015)).

Exodus fails to state a claim for tortious interference with prospective economic advantage. To satisfy the third prong of its tortious interference claim, Exodus cursorily asserts that "NBC knew that if it informed Plaintiff that it was highly likely that the Below Deck Series would be cancelled . . . that Plaintiff would not enter into the Charter Agreement or would have required protective language in the Charter Agreement." (Am. Compl. ¶ 18.) Exodus additionally alleges that "NBC intentionally withheld [this] material information so that Plaintiff would enter into the Charter Agreement with MVP," and that "NBC's actions constitute fraud."[3] (*Id.*; *see also id.* ¶ 41.) But these allegations of fraud are devoid of supporting facts, and as such, fall far short of the pleading requirements of Rule 9(b). Exodus supplies no specific details from which the Court can infer that NBC knew the series would be cancelled, intentionally withheld or misrepresented this information, or otherwise "acted for a wrongful purpose or used improper means—let alone wrongful conduct that amounts to a crime or independent tort." *Just Play, LLC v. A.S. Plastic Toys Co.*, No. 19-CV-9399, 2022 WL 580876, at *4 (S.D.N.Y. Feb. 25, 2022). It therefore has not adequately alleged the third element required to state a claim of tortious interference with prospective economic advantage.

---

[3] Exodus does not make any allegations of fraud as to the Filming Agreement.

Because Exodus's allegations of fraud amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), Exodus's claim for tortious interference with prospective economic advantage is dismissed for failure to state a claim.

### B.    Tortious Interference with Contract

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch*, 449 F.3d at 401 (quotation marks omitted).

No party disputes the existence of a valid contract between Exodus and MVP or NBC's knowledge of that contract.  Instead, NBC argues that, because the Charter Agreement is terminable at will, it cannot serve as the basis for a tortious interference claim.  (Mem. at 12.) *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02-CV-1363, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (collecting cases).  Exodus concedes this is the law, but contends that the Charter Agreement is not in fact terminable at will.  (Opp. at 15.)  This is so, Exodus argues, because Clause 11 of the Charter Agreement is a liquidated damages provision that "is inconsistent with the existence of a contract terminable at will" (*id.* at 16 (quotation marks and emphasis omitted)), the Charter Agreement is of a finite duration, and other provisions of the contract specify when, and under what circumstances, the Owner may terminate the agreement (*id.* at 17).[4]

---

[4] Presumably because the terms of the Filming Agreement "shall be governed and construed in accordance with the terms of the [Charter] Agreement" (ECF No. 26-1 at 3), the parties focus their briefing exclusively on the terms of the Charter Agreement.

It is ambiguous from the plain language of the Charter Agreement whether it is terminable at will. Although Clause 11 contemplates cancellation by either party, it does not expressly give the parties the right to terminate the contract at any time. *Compare* ECF No. 22-2 at 6 *with SING for Serv., LLC v. DOWC Admin. Servs., LLC*, No. 20-CV-5617, 2022 WL 36478, ECF No. 29-1 at 28 (S.D.N.Y. November 4, 2020) ("You may cancel this Service Contract at any time by following the Cancellation Process as set forth below."). Instead, Clause 11 sets forth payment obligations incurred by the cancelling party depending on when that cancellation takes place. Some New York courts have treated termination fees of this kind as liquidated damages, which suggests that the contract is not at-will. *See, e.g.*, *VII MP Miami Hotel Owner, LLC v. Hycroft, LLC*, 168 N.Y.S.3d 322, 322 (1st Dep't 2022); *see also In re SE Opportunity Fund*, No. 11-14970, 2015 WL 9315563, at *3 (Bankr. S.D.N.Y. Dec. 22, 2015) ("A liquidated damages provision need not be expressly labelled a 'liquidated damages' provision to be effective as such."). Moreover, because of the finite duration of the charter period, there is no presumption that the contract is terminable at will. *See Edwards v. Citibank, N.A.*, 418 N.Y.S.2d 269, 270 (Sup. Ct. 1979) ("[I]t is hornbook law that any contract for an indefinite period of time is terminable at the will of either party at any time.").

At the same time, the Charter Agreement does not explicitly designate cancellation as a breach of its terms or the payment obligations as liquidated damages. In fact, Clause 11 specifies that the non-payment of the fees due upon cancellation shall be treated as a breach of contract, but is silent as to the act of cancellation itself. (ECF No. 22-2 at 6, 11.) And other New York courts have declined to analyze termination fees as liquidated damages. *See, e.g.*, *Trilegiant Corp. v. Orbitz, LLC*, 5 N.Y.S.3d 366, 367 (1st Dep't 2015) ("Nor does the early termination

7

option constitute a liquidated damages provision based on impossibility of performance; it is a contractual remedy for defendants' choice to terminate the agreement early.").

Whether the Charter Agreement is terminable at will bears directly on whether MVP's cancellation constituted a breach of contract, which is required to sustain a claim of tortious interference with contract. Because there is an ongoing arbitration between Exodus and MVP to resolve precisely this question of breach, the Court stays the adjudication of this claim pending the resolution of arbitration. *See GlobeNet Cabos Submarinos Am. Inc. v. FSF Tech. LTDA EPP*, No. 18-CV-4477, 2019 WL 1437163, at \*3 (S.D.N.Y. Mar. 29, 2019) ("[C]ourts in this district have used their 'inherent power' to stay cases pending ongoing arbitrations, even when those arbitrations involve nonparties to the court actions.").

### C.    Leave to Amend

Exodus requests that it be given leave to amend its complaint if the Court decides to dismiss any of its claims. (Opp. at 24.) "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Exodus has already been afforded an opportunity to amend its complaint following NBC's first motion to dismiss. (Am. Compl.) That amendment did not cure the deficiencies identified in NBC's first motion to dismiss; nor does Exodus explain how further amendment will do so.

"Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at \*8 (S.D.N.Y. Mar. 4, 2022) (collecting cases); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)

8

("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."). Accordingly, Exodus's request for a second leave to amend is denied.

## V.     Conclusion

For the foregoing reasons, NBC's motion to dismiss Exodus's Amended Complaint is GRANTED in part and DENIED without prejudice to renewal in part.  Exodus's claim for tortious interference with prospective economic advantage is dismissed with prejudice.  Exodus's claim for tortious interference with contract remains, but further proceedings on that claim are STAYED pending the related arbitration in London.  NBC's earlier motion to dismiss, filed at Docket Number 10, is denied as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 10 and 22 and mark this case as stayed.

SO ORDERED.

Dated: February 9, 2026
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

9